RECEIVED
IN LAKE CHARLES, LA.
JUL 25 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| SUMMER SEXSON, ET AL | : | DOCKET NO. 2:12-CV-02846-PM-KK |
| VS. | : | JUDGE MINALDI |
| BOISE CASCADE CORPORATION | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [Doc. 17], filed by the defendant, Boise Packing & Newsprint, LLC. ("Boise"). The plaintiff, Summer Sexson, filed an opposition [Doc. 20], as did her workers' compensation provider/the intervenor-plaintiff, Vernon Parish School Board [Doc. 19]. Boise then filed a reply [Doc. 24]. For the foregoing reasons, Boise's Motion for Summary Judgment is GRANTED.

## FACTUAL BACKGROUND

This case arises out of personal injuries sustained by the plaintiff, Ms. Sexson (a Leesville High School cross country coach), when her leg fell into a covered hole on the premises of Boise's paper mill facility during a high school cross country meet.[1] Ms. Sexson originally filed suit in the Thirty-Sixth Judicial Court of Beauregard Parish in October 2012, and Boise then timely removed to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[2]

The undisputed facts are as follows:

---

[1] See Pl.'s Compl., [Doc. 1-3] at ¶¶ 6-10.

[2] Not. of Removal, [Doc. 1].

For a number of years, Boise has allowed DeRidder High School to hold an annual cross-country meet (the DeRidder High School Boise Cascade Meet) on its property, known as the Boise paper mill, in DeRidder, Louisiana.[3] Boise does not charge DeRidder High School or any other party to use the premises for the meet, although high schools must pay an entry fee to DeRidder High School to participate in the meet.[4]

Participants in the DeRidder High School Boise Cascade Meet run through the property in predefined jogging trails and pass by a location known as the "Bocade Recreation Park."[5] The Bocade Recreation Park includes a structure that provides spectators, coaches, and athletes shade, restroom facilities, and Boise-supplied refreshments.[6]

On October 13, 2011, Ms. Sexson was at the Boise paper mill for the annual meet. Prior to the race, Ms. Sexson was in the area of the Bocade Recreation Park assisting one of her cross-country runners.[7] She then spoke to her team before turning and walking away.[8] One of the runners then "hollered" at Ms. Sexson, which made her turn and walk back to speak to the runner.[9] While en route, she stepped into what appeared to be a man-made hole about two and a half to three feet deep and eight to ten inches in diameter.[10] The hole was concealed by grass.[11] She sustained various injuries as a result of stepping into the hole.

---

[3] Dep. of Michael Roy Greene, Ex. to Def.'s Mot. for Summ. J., [Doc. 17-6] at p. 14.

[4] *Id.* at p. 32.

[5] *Id.* at p. 23.

[6] *Id.*

[7] Dep. of Summer Sexson, Ex. to Def.'s Mot. for Summ. J., [Doc. 17-2] at p. 44.

[8] *Id.* at p. 45.

[9] *Id.*

[10] *Id.* at p. 61.

Boise now moves for summary judgment on Ms. Sexson's claim for damages, arguing that it is immune from liability under Louisiana's Recreational Use Immunity Statutes.

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine dispute of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party…" *Id.*

---

[11] *Id.* at p. 80.

## LAW AND ANALYSIS

The dispositive issue in this case is whether Louisiana's Recreational Use Immunity Statutes, La. Rev. Stat. ann. §§ 9:2791, 9:2795 provide immunity to Boise from Ms. Sexson's claims.

Ms. Sexson argues that Boise does not enjoy immunity from suit in this case, and is therefore liable for injuries she sustained on the Boise paper mill property. In support of this claim, she alleges that the Recreational Use Immunity Statutes are not applicable for the following reasons: (1) the cross-country meet that brought her onto Boise's land was not the type of event contemplated by the language of § 9:2795; (2) she was not on Boise's property for "recreational" purposes; (3) Boise's active role in hosting the event was outside the scope of the statutes; and, (4) Boise was grossly negligent in failing to warn the plaintiff of the hole on the property. The intervenor-plaintiff, Vernon Parish School District, additionally claims that the Bocade Recreation Park falls outside the protection of § 9:2795 because it is a property primarily used for commercial recreational purposes, and echoes Ms. Sexson's sentiments that Boise was grossly negligent in its failure to warn.

Boise counters that the Recreational Use Immunity Statutes provide total immunity against Ms. Sexson's claims. It avers that the legislature wrote the Recreational Use Immunity Statutes broadly to prevent private land owners from closing off their lands from the public out of fear of liability, and that failing to grant summary judgment would thus directly contradict the purpose of the legislation. Further, it claims that Ms. Sexson has failed to meet her burden of showing a genuine dispute of material fact as to Boise's alleged gross negligence in failing to warn of the hole in the property.

I. **Is the Recreational Use Immunity Statute broad enough to cover Ms. Sexosn's claims?**

4

Boise claims that the Recreational Use Immunity Statutes, which limit landowners' liability to third party injuries in some situations, clearly shields it from the suit at bar. As the plaintiff's first three arguments against application of the statute are interrelated on this point, the undersigned will address these arguments together.

As background, the court notes that §§ 9:2791 and 9:2795 relate to the same subject matter, and thus are to be read together. *Keelen v. State, Dept. of Culture, Recreation and Tourism*, 463 So.2d 1287, 1289 (La.1985). The two statutes were passed in 1964 and 1975, respectively. While the statutes differ slightly in "phraseology," they "essentially accomplish the same purpose . . . to encourage landowners to open their lands, on a basically nonprofit basis for recreational use." *Fournerat v. Farm Bureau Ins. Co.*, 2011-1344 (La. App. 1 Cir. 9/21/12); 104 So. 3d 76, 80–81. As succinctly explained by the Louisiana First Circuit:

> [The Recreational Use Statutes] are in derogation of common or natural right and, therefore, are to be strictly interpreted, and must not be extended beyond their obvious meaning. *Monteville v. Terrbonne Parish Consol. Government*, 567 So.2d 1097, 1100 (La.1990). However, the enactment of La. R.S. 9:2795, a second more expansive immunity statute, evidences an intent on the Legislature's part that these statutes are to grant a broad immunity from liability. *Richard*, 2003–1488 at 28, 874 So.2d at 151. The statement of purpose of La. R.S. 9:2795 is contained in 1975 La. Acts, No. 615, § 1 and provides: "The purpose of this Act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." *Richard*, 2003–1488 at 26, 874 So.2d at 150. Furthermore, 1975 La. Acts, No. 615, § 7 provides that all laws or parts of laws in conflict with La. R.S. 9:2795 are repealed. Inasmuch as La. R.S. 9:2795, as enacted by Act 615 of 1975, was the later expression of legislative will and has been amended six times, we conclude that the legislature has impliedly expressed an intention that La. R.S. 9:2795 be controlling as between these two statutes. *See Peterson v. Western World Ins. Co.*, 536 So.2d 639, 643 (La.App. 1 Cir.1988), *writ denied,* 541 So.2d 858 (La.1989). Thus, if there is a conflict between the statutes, the later enacted one, La. R.S. 9:2795, controls. *Richard*, 2003–1488 at 28, 874 So.2d at 151.

*Id.* at 81. Turning to § 9:2795, the statute states, in relevant part:

5

A. (1) "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.

\*\*\*

(3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites."

\*\*\*

B.(1) Except for willful or malicious failure to warn against a dangerous condition [or] structure, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:

(a) Extend any assurance that the premises are safe for any purpose.

(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.

(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

Older court decisions construed the Recreational Use Statutes narrowly, applying a three-part test to ascertain whether a defendant was entitled to immunity: (1) the injury had to occur on undeveloped, non-residential, or rural/semi-rural land; (2) the injury had to result from recreation that can be pursued in the "true outdoors;" and, (3) the injury-causing instrumentality had to be the type encountered in the "true outdoors" and not "of the type usually found in someone's backyard." *Fournerat*, 104 So. 3d at 82 (citing *Keelen*, 463 So. 2d at 1290–91). Subsequent amendments to the statutes, however, did away with both the first prong[12] and third prong of this

---

[12] The 2001 amendment to § 9:2795 added "urban or rural" to section (A)(1) and E(2)(a)).

test.[13] Accordingly, as explained in more detail *infra*, courts in Louisiana have greatly expanded the reach of immunity under these statutes.

One such example which showcases the broad scope of the Recreational Use Statutes in the aftermath of the 1995 and 2001 amendments is the Louisiana Third Circuit case, *Benoit v. City of Lake Charles*, 2005-89 (La. App. 3 Cir. 7/20/05); 907 So.2d 931. Since *Benoit* bears some similarity to the case at bar, it is heavily discussed by both Boise and Ms. Sexson. In *Benoit*, a mother was injured when she fell while attending her son's youth baseball tournament, which was held in a city-owned, developed park in Lake Charles, Louisiana. *Id.* at 932. The mother subsequently sued the City of Lake Charles, the United States Specialty Sports Association (hereafter "USSSA," the organization that had hosted and organized the tournament), and USSSA's insurer. *Id.* At the trial court level, all of the defendants moved for summary judgment, arguing that § 9:2795 shielded them from immunity, with the trial court denying this motion. *Id.* at 933. The defendants then appealed, arguing that the trial court's denial of summary judgment was improper. *Id.*

On appeal, in discerning whether § 9:2795 would apply, first, the Third Circuit Court of Appeal found that the City-owned park would fall under § 9:2795's "sufficiently expansive" definition of "land." *Id.* at 935. The court was persuaded by the fact that the Louisiana legislature had expanded the statute in 2001 to include "*urban* or rural land," thus allowing the developed park to fall under the ambit of the statute. *Id.* (emphasis in original). Second, the court found that the baseball tournament fell within the "expressly nonexclusive" category of "summer and winter sports" listed in § 9:2795, and therefore could be considered a recreational

---

[13] The 1995 amendment to 9:2795(B)(1)(c) substituted "caused by any defect in the land regardless of whether naturally occurring or man-made" for "incurred by such person."

use under the statute. *Id.* at 935–36. Finally, the court rejected the plaintiff's argument that the City fell under the definition of § 9:2795(B)(1) as "an owner of commercial recreational developments or facilities" which would not receive immunity under the statute. *Id.* at 936. The court noted that there was no evidence the City itself had charged anyone to use the land, and that even if it had charged a fee, immunity would still be available because "9:2795(B)(1) indicates immunity extends to an owner of land 'who permits *with or without charge* any person to use his land for recreational purposes.'" *Id.* (emphasis in original). Importantly, however, the court noted that the same conclusion would not extend to USSSA, the organization that had actually sponsored the event and charged fees to spectators and participants. *Id.* Since USSSA had only presented "general" testimony on how the organization used the baseball fields, the Third Circuit found it was appropriate for the trial court to deny USSSA summary judgment based on § 9:2795 immunity. *Id.*

Construing *Benoit*, Boise thus argues that: (1) if a developed public park can fall under the definition of "land" within the statute, then the Boise paper mill certainly qualifies as well; (2) if the Benoit mother's spectator activities at a baseball game qualify as "recreational purposes," then Ms. Sexson's participation as a cross-country coach also falls within the ambit of the statute; and, (3) much like the City, because Boise did not charge anyone fees to use the land for the meet, Boise could not be considered a "commercial enterprise."

Ms. Sexson notes in her opposition, however, that the *Benoit* decision drew two strong dissents from Judges Thibodeaux and Saunders. In Judge Thibodeaux's dissent, he cautioned that the majority had "turn[ed] the interpretation of th[e] restrictive statute topsy-turvy" by broadly (as opposed to strictly) construing it. *Id.* at 939 (Thibodeaux, J., dissenting in part). He noted that the passive action of watching a baseball game should not fall under the statute's

definition of "recreational use," and that previous case law indicated that a developed park certainly would not fall within the ambit of the statute. *Id.* Judge Saunders similarly criticized the majority's definition of baseball as a "summer sport" which could fall under the definition of "recreational use," arguing that baseball was an organized sport not explicitly mentioned in the statute, unlike other activities (hunting, fishing, trapping, swimming, boating, etc.). *Id.* (Saunders, J. concurring in part and dissenting in part). He also echoed Judge Thibodaux's concern that extending the statute's application to passive spectators impermissibly expanded the scope of immunity to defendants. *Id.* at 940. Ms. Sexson thus asks this court to heed the "slippery slope" warnings from the *Benoit* dissents: essentially, if the court finds immunity in this instance, there is a danger that many tort victims may be precluded from recovery because of an impermissibly broad reading of § 9:2795.

Addressing these arguments, the undersigned disagrees with Judge Thibodeaux's narrow reading of what type of land falls under the ambit of the statute. As noted *supra*, § 9:2795 was amended in 2001 to include "urban" land, and thus citations to case law from before this amendment (which require the land to be "open and undeveloped") are unpersuasive. Additionally, while Vernon Parish, perhaps trying to distinguish *Benoit*, makes the argument that Boise's land does not fit the definition of a "public park," the undersigned notes that this does not make a difference – the statute will apply whether the land is publicly or privately owned. *See Stuart v. City of Morgan City*, 504 So. 2d 934 (La. Ct. App. 1 Cir. 1987). Based on the terms of the statute, therefore, the Boise paper mill falls under § 9:2795's definition of "land."

Further, Boise's passive providing of a location for the cross country meet does not rise to the level of "commercial enterprise" contemplated by the statute. As argued by Boise, it did not charge any fees to use its land: instead, DeRidder High School itself charged entry fees to

9

participating schools.[14] It is immaterial whether the Bocade Recreation Park primarily served as a recreational facility – as noted by other courts, the inquiry on this prong will turn on whether the owner operated the facility for a profit. *See, e.g., Richard v. Hall*, 2003-1488 (La. 4/23/04); 874 So. 2d 131 (finding that lessee was not a "commercial enterprise" under § 9:2795 because the lessee did not utilize the premises for commercial profit); *Van Pelt v. Morgan City Power Boat Ass'n, Inc.*, 489 So. 2d 1346 (La. App. 1 Cir. 1986), writ granted, 493 So. 2d 627, cause dismissed (finding that a boat race sponsor who collected admission fees was not a "commercial enterprise" under § 9:2795 because the sponsor was a nonprofit corporation); *Thomas v. Jeane*, 411 So. 2d 744 (La. App. 3 Cir. 1982) (finding that the state did not operate a park as a "commercial enterprise" under § 9:2795 because the park was not operated for profit).

Turning to the last factor, while Ms. Sexson cautions that applying the "recreational use" definition to her activities would be an impermissibly broad reading of the statute, the court notes that the "recreational purposes" definition expressly notes that it *"includes but is not limited to"* the long laundry list of activities set forth in the statute. § 9:2795(A)(3) (emphasis added). This indicates that the list was not meant to be "exhaustive." *Richard v. Louisiana Newpack Shrimp Co. Inc.*, 11-309 (La. App. 5 Cir. 12/28/11); 92 So. 3d 541, 546. Further, as noted by the Louisiana Fifth Circuit in a recent decision, § 9:2795 "does not require that the injury arise out of the recreational activity *per se*, as long as the person injured was on the property for a recreational purpose. *Id.* at 547 (finding that § 9:2795's "recreational use" definition was broad enough to cover a woman who was injured while boarding a boat to resume camping activities); *see also Webb v. Parish of St. Tammany*, 2006-0849 (La. App. 1 Cir. 2/9/07); 959 So. 2d 921 (finding that a motorcycle driver who was injured in motorcycle accident on park premises while

---

[14] Greene Dep. at pp. 16, 23.

10

leaving softball game still fell under the "recreational use" definition of § 9:2795). Based on the broad language within the "recreational use" definition itself, cases construing the term liberally, and the statutes' legislative history itself (which indicates that the Recreational Use Statutes have been greatly broadened in recent years), the undersigned finds that Ms. Sexson's activity would also fall under the "recreational use" definition. Accordingly, summary judgment is proper on this issue.

II.     **Was Boise grossly negligent?**

Ms. Sexson and Vernon Parish next claim that Boise willfully or maliciously failed to warn of the hole that caused Ms. Sexson's injury. Essentially, they contend that because Boise staff maintained the premises, which included mowing the lawn in the area where Ms. Sexson fell, Boise *must* have had constructive notice of the hole.

Once a defendant establishes that it is entitled to immunity under § 9:2795, the burden of establishing a malicious or willful failure to warn of a dangerous condition shifts to the plaintiff. *Souza v. St. Tammany Parish*, 11-2198 (La. App. 1 Cir. 2012); 93 So.3d 745, 750. "[A] failure to warn of a dangerous condition connotes a conscious course of action, and is deemed willful or malicious when action is knowingly taken or not taken, which would likely cause injury, with conscious indifference to the consequences thereof." *Id.* A land owner must know of the dangerous condition, and a mere probability that a land owner knew of such a dangerous condition is not sufficient to establish actual knowledge. *See Bertoniere v. United States*, No. 01-3719, 2003 WL 21488127, *3 (E.D. La. June 25, 2003).

As an example, in the Eastern District of Louisiana case *Bertoniere v. United States*, a plaintiff was injured when, while swinging on a frayed rope swing in Kisatchie National Forest, the rope broke off in midair. *Id.* at *1. Analyzing the Recreational Use Statutes, Judge

11

Engelhardt concluded that the plaintiff's production of two affidavits, which stated that the rope swing was in view of nearby trails, was not enough to suggest the defendant had actual knowledge of the defective rope swing. *Id.* at *3. Accordingly, Judge Engelhardt found that the defendant was immune from liability. *Id.*

Similarly, in this case, Ms. Sexson has not supplied any supporting evidence that Boise knew of the hole that caused her injury. Instead, Ms. Sexson argues that, due to the proximity of the Bocade Recreation Area, the area's high foot traffic while in use, and Boise's grounds-keeping of the area in question, Boise *must* have known of the hole that caused the plaintiff's injury. Like *Bertoniere*, however, Ms. Sexson's argument is insufficient to persuade this court that Boise willfully or maliciously failed to warn of the hole, and thus Ms. Sexson has failed to carry her burden on this point.

## CONCLUSION

Accordingly, because the court has found that Boise is entitled to immunity under the Recreational Immunity Statutes, and Ms. Sexson has failed to meet her burden in showing willful or malicious failure to warn, Boise is entitled to summary judgment on Ms. Sexson's claims.

Lake Charles, Louisiana, this 23 day of July, 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE